Russell G. Wheeler (RW 8995)
Charny & Wheeler
9 West Market Street
Rhinebeck, New York  12572
Tel - (845) 876-7500
Fax - (845) 876-7501
rwheeler@charnywheeler.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ELIZABETH STUDENT,

                                        Plaintiff,

        v.                                                          COMPLAINT

STATE UNIVERSITY OF NEW YORK and STATE          Index No. 18-cv-1444
UNIVERSITY OF NEW YORK AT NEW PALTZ

                                        Defendant.                  ELECTRONICALLY FILED

        Plaintiff Elizabeth Student, by and through her counsel Charny & Wheeler, brings this

Complaint and in support thereof states as follows.

                            NATURE OF THE ACTION

        1.      This is an action for damages and other relief under:  (i) Title VII of the Civil

Rights Act of 1964 (herein Title VII) based on Defendants' unlawful fostering of a gender-based

hostile work environment, discriminatory conduct and adverse employment actions taken against

Plaintiff on the basis of her gender and Defendants' retaliation against Plaintiff because she

advocated for herself in connection with her gender and against Defendants' gender-based hostile

work environment; and (ii) Title IX of the Education Amendments Act of 1972 (herein Title IX)

based on Defendants' discrimination and inequitable allocation of resources among its athletic

programs based upon gender and Defendants' retaliation against Plaintiff because she advocated

against such conduct by Defendants.

<u>JURISDICTION AND VENUE</u>

2.      This Court has jurisdiction over this action pursuant to 29 U.S.C. § 2617(a)(2) and

28 U.S.C. §§ 1331.  Plaintiff's claims are brought under Title VII of the Civil Rights Act of

1965, 42 U.S.C. § 200e-2 <u>et seq.</u>, and the Title IX of the Educational Amendments Act of 1972,

20 U.S.C. §§ 1681 <u>et seq.</u>

3.      Venue is proper in that Defendant State University of New York resides within

this District.

<u>PARTIES</u>

4.      Plaintiff Elizabeth Student (herein Plaintiff) is a female individual and former

employee of Defendants, currently residing in Ulster County, New York.

5.      Defendant State University of New York (herein SUNY) is a comprehensive

system of public institutions of higher education within the State of New York, including within

the Southern District of New York.

6.      Defendant State University of New York at New Paltz (herein SUNY-New Paltz)

is a SUNY college located in New Paltz, Ulster County, New York.

7.       SUNY and SUNY-New Paltz are collectively referred to herein as Defendants.

8.      Upon information and belief, at all times relevant herein, Defendants received

Federal financial assistance in their operation of educational programs and activities.

<u>FACTS</u>

9.      In or about January 2012, Plaintiff began employment with Defendants as Head

Women's Lacrosse Coach at SUNY-New Paltz.

10.      As Head Women's Lacrosse Coach, Plaintiff was responsible for managing all

aspects of the SUNY-New Paltz Women's Lacrosse program, including recruiting student

athletes, conducting trainings and practices, serving as a resource and mentor for team members, monitoring academic performance of student athletes, scheduling games, planning and requesting transportation, obtaining equipment and practice and game facilities and coaching the team in practice and games.

11.     In such capacity, Plaintiff was directly supervised by and reported to Director of Athletics Stuart Robinson.  At all times relevant herein, Director Robinson was authorized to and in fact undertake tangible employment decisions affecting Plaintiff, including to hire, fire, promote and reassign Plaintiff.  At all times relevant herein, Director Robinson was authorized and in fact did direct Plaintiff's daily work activities.

DEFENDANT'S INEQUITABLE ALLOCATION
OF RESOURCES TO FEMALE ATHLETIC PROGRAMS

Introduction

12.      During the entirety of Plaintiff's employment, Defendants discriminated against female student athletes at New Paltz by inequitably distributing financial, physical and human resources between the male and female athletic programs on the basis of gender.

13.     Defendants' inequitable distribution of resources on the basis of gender as described herein interfered with and stigmatized the SUNY-New Paltz Women's Lacrosse program, negatively affected morale of its participants and impaired the athletic performance of the Program.

Defendant's Failure to Provide Adequate
Practice and Game Facilities to the Women's Lacrosse Program

14.     On multiple occasions during each winter and spring during her employment, Plaintiff requested that Defendant plow the snow from the field on which the Women's athletic teams, including Lacrosse, played and practiced or in the alternative, provide the team with a

sufficiently-maintained outdoor field or adequate indoor practice facility to use.

15. Through the entirety of Plaintiff's employment, Defendants refused to plow the snow from the field used by the Women's athletic programs.   On those occasions that Defendants provided the Women's athletic teams with indoor practice facilities, they prohibited Plaintiff from bringing in necessary equipment, such as standard goals, and/or forced Plaintiff to conduct practices in cramped or otherwise unsuitable spaces, such as in a racquetball court.

16. During the time period that they refused to adequately maintain the fields used by Women's athletic programs and/or provide adequate indoor training facilities, Defendants consistently provided the Men's athletic programs with adequate training and game facilities during the winter month, including providing the Men's baseball team with a sufficiently maintained game field off-campus.

17. During the period that it refused to plow or otherwise maintain the athletic field used by the New Paltz Women's athletic teams, including Lacrosse and Softball, Defendants directed that improvements valued at approximately $400,000 be made to the athletic field used by men's athletic teams.  Such improvements included resodding the outfield and placing new dirt on the infield.

18. Defendants' actions as described above required Plaintiff to schedule first games of the Women's Lacrosse season as "away" games, necessitating additional travel by the team, which conflicted with the Women's Lacrosse Program student athlete's academic schedules.

19. Defendants' actions as described above also deprived the Women's Lacrosse team from practicing on an outdoor field prior to the first games of its season against teams that had by such time had ample opportunity to practice on outdoor fields.

20. Defendants' action as described above rendered the practice and game facilities

used by the Women's Lacrosse team unsafe and more likely to cause injury.

21.    Defendants' actions in inequitably distributing resources to its athletic programs on the basis of gender stigmatized the Women's Lacrosse program, negatively affected its athletic performance and lowered morale among participants.

<u>Defendants' Failure to Provide Equal Professional and<br>Educational Opportunities to Participants of the Women's Lacrosse Program</u>

22.    Throughout Plaintiff's employment, Defendanst failed to provide female student athletes – including members of the Women's Lacrosse program coached by Plaintiff – with the same professional and educational opportunities as Defendant extended to male student athletes.

23.    The professional and educational opportunities withheld from members of the Women's Lacrosse program included internships, mentoring by the Athletic Director and employment opportunities.

24.    Throughout Plaintiff's employment, Defendants provided male student athletes with Athletic Director internships and mentoring opportunities; Defendants granted no such opportunities to female student athletes.

25.    Defendants' long-running failure to provide female student athletes with same internship and mentoring opportunities given to male student athletes prevented Plaintiff from promoting such opportunities as benefit of attending SUNY-New Paltz and accordingly impaired Plaintiff's ability to recruit female student athletes to the Women's Lacrosse program.

26.    Throughout Plaintiff's employment, Defendants also discriminated against female student athletes – including members of the Women's Lacrosse program coached by Plaintiff – in hiring to fill jobs within the SUNY-New Paltz Athletic Department such as gym monitors, and created student employment positions specifically to staff with male student athletes. The schedules of such Athletic Department jobs are accommodating of athletic program obligations,

5

including practices and games and are accordingly more desirable than jobs outside of the Department.

27.     As a result of Defendants' discriminatory hiring practices, female student athletes – including members of the Women's Lacrosse program coached by Plaintiff throughout her employment – were required to take jobs outside of the Athletic Department that were not as accommodating of their Program obligations.

28.     Defendants' actions in inequitably withholding professional, mentorship and employment opportunities to student athletes on the basis of gender stigmatized the Women's Lacrosse program, negatively affected its athletic performance and lowered morale among participants.

<u>Hinderance of Plaintiff's Professional Opportunities as a Result of Defendants' Conduct</u>

29.     Defendants' actions as described above hindered Plaintiff's professional opportunities as a college athletic coach.

30.     By impeding the athletic success of the new Paltz Women's Lacrosse program, Defendants harmed Plaintiff's reputation as a coach both within SUNY-New Paltz and the college coaching field.

31.     By stigmatizing the Women's Lacrosse program, lowering morale among its participants and impeding its athletic success, Defendants impaired Plaintiff's ability to recruit and retain student athletes.

32.     By impairing Plaintiff's ability to recruit student athletes to the SUNY-New Paltz Women's Lacrosse program, Defendants further impeded its athletic success.

33.     By impairing Plaintiff's ability to recruit student athletes, Defendants diminished Plaintiff's contacts with prospective student athletes and within the field of college athletics.

<u>DEFENDANTS' RETALIATION AGAINST PLAINTIFF FOR ADVOCATING AGAINST
ITS DISCRIMINATORY ALLOCATION OF RESOURCES ON THE BASIS OF GENDER</u>

34.     In or about December 2012, Defendants appointed Plaintiff to serve as Senior

Woman Administrator ("SWA") for SUNY-New Paltz.

35.     As SWA, Plaintiff represented the interest of coaches, personnel, athletes and

students with regard to the administration and governance of intercollegiate athletics, more

specifically as to Title IX training and reporting.

36.     The position of SWA is defined by the Constitution of the National Collegiate

Athletics Association ("NCAA") as "the highest ranking female administrator involved with the

conduct of a member institution's intercollegiate athletics program." (NCAA Constitution

4.02.4).

37.     SWA is a professional athletics administrator and is intended to serve as a role

model and resource to student athletes and coaches and a spokesperson for the needs and

interests of women athletes and to support gender equality and Title IX initiatives.

38.     At SUNY-New Paltz, during Plaintiff's tenure as SWA, the position of SWA

carried with it prestige and distinction, the potential for career advancement and was

compensated by way of a wage stipend.

39.     As SWA, Plaintiff advocated for the interests of such parties, specifically by

complaining to Director Robinson concerning the inequitable allocation of resources between the

men's and women's athletic programs, the training and/or responsiveness of SUNY-New Paltz

Athletic Department faculty and staff to issues of sexual assault and harassment of female

student athletes and Director Robinson's accessibility to female student athletes.

40.     At Director Robinson's request, in or about Spring 2015, Defendants retained a

consultant to provide professional analysis and comment regarding the development of the

Women's Lacrosse team and professional development feedback to Athletic Director Robinson and Plaintiff.

41.     In or about May 2015, the consultant retained by Defendants concluded that Plaintiff was an asset to the Athletic Department as SWA and recommended that she continue in that role.

42.     Nevertheless, in or about Summer 2015, Director Robinson summarily terminated Plaintiff's appointment as SWA, causing Plaintiff to suffer loss of income and loss of career advancement and opportunities.  Notwithstanding the termination of her appointment as SWA, Director Robinson directed Plaintiff to continue to perform the responsibilities of the title, without the additional compensation or recognition associated with it.

43.     Upon information and belief, Defendants terminated Plaintiff's appointment as SWA in retaliation for Plaintiff having advocated against the inequitable allocation of resources to women's athletic programs and the disparate treatment of female student athletes.

<u>DEFENDANTS' DISCRIMINATION AND HARASSMENT OF PLAINTIFF AND FOSTERING OF A GENDER-BASED HOSTILE WORK ENVIRONMENT</u>

44.     Shortly after her hire and continuing until her separation from employment as described herein, Plaintiff was the subject of a consistent stream of commentary, jokes and verbal harassment by Director Robinson concerning her gender.

45.     Such conduct included using Plaintiff's appointment to SWA as a pretext for assigning her work outside of the scope of such appointment or her job description.

46.     Director Robinson constantly asked Plaintiff when she intended to start a family with her husband.  Director Robinson's communications on this subject were often sexually crude and puerile, such as the May 2013 email he sent Plaintiff stating "Go make babies! WOW! I went there."  When Plaintiff responded that she intended to wait until her program was more

successful and established before starting a family, Director Robinson would state that it was Plaintiff's responsibility to give her husband children, that she was letting him down by wanting to wait to have children and that it was unwise for her to wait to do so because she would never have a winning athletic program at SUNY-New Paltz.

47.     In addition, upon meeting with Plaintiff in his office or for a meeting, Director Robinson would stare at Plaintiff and thereafter make inappropriate comment about her physical appearance and/or dress, such as "Your husband deserves you to be dressed better," "Why can't you look nicer?" and "Are you really going to wear that?"  All such times, Plaintiff was dressed professionally and appropriately to her position with Defendants.

48.     Another time, in or about December 2012, while returning by car from a conference, Director Robinson and the University's male Associate Athletic Director sought to engage Plaintiff in a game they called "Fuck, Kill, Marry." The premise of this game is to present someone with the names of three individuals, who must then choose one to sleep with, one to kill and one to marry.  On this occasion, Director Robinson and the Associate Director attempted to force Plaintiff to play this "game" by sorting various male coaching staff (with whom Director Robinson, the Associate Director and Plaintiff all worked) into the above categories.

49.     Director Robinson made the foregoing and other comments disparaging and harassing Plaintiff on the basis of her gender while traveling with Plaintiff by car.  Upon information and belief, Director Robinson intentionally chose to harass and disparage Plaintiff when she was with him in a confined space and unable to remove herself from the situation so as to demonstrate his power over her.

50.     In or about January 2015, while representing Defendants at an NCAA conference meeting in Washington, D.C., Director Robinson forced Plaintiff to share a hotel room with a

9

male former employee of Defendants.  Director Robinson did not consult Plaintiff before allowing the male former employee to share her hotel room and insisted that he be allowed to do so over Plaintiff's objection.

51.     On or about April 29, 2016, while walking on the SUNY-New Paltz campus with several male coaches to get coffee, Director Robinson stated that he had recently visited Plaintiff's alma mater.  In the course of their discussion about the school, he told Plaintiff (in front of her male colleagues), "The only thing left of you there was your name and phone number on the men's bathroom wall saying: 'Call for a good time.'"

52.     Throughout her employment with Defendants, Director Robinson communicated to Plaintiff that her prospects for professional success and advancement depended on her tolerating his gender-based discrimination and harassment and that any efforts by her to report his conduct would result in a curtailment of such prospects.

### DEFENDANTS' RETALIATION AGAINST PLAINTIFF FOR HAVING ADVOCATED FOR HERSELF IN CONNECTION WITH HER GENDER AND AGAINST DEFENDANTS' GENDER-BASED HOSTILE WORK ENVIRONMENT

53.     Notwithstanding Director Robinson's threats, Plaintiff reported Director Robinson's discrimination and harassment to the Defendants' Title IX Coordinator for SUNY-New Paltz in May 2016.

54.     Following receipt of Plaintiff's complaint, Defendants delayed for over two months before commencing an investigation.

55.     Upon information and belief, following Plaintiff's report, Director Robinson learned that an unidentified member of his coaching staff had filed a complaint of gender-based harassment and retaliation against him.

56.     Following the submission of Plaintiff's complaint, Director Robinson helped to

develop for dissemination by Defendants a purportedly anonymous fundraising survey directed to Department staff.  The survey posed such questions as "I consider colleagues to be friends," "The Administration respect [sic] the fact that I'm a varsity coach" and "Faculty members respect the fact that I'm a varsity coach." Although the survey did not solicit the name of the employee filling it out, it requires the employee to identify the sport coached and the capacity served, making the respondent instantly identifiable.

57.     Upon information and belief, Director Robinson developed and caused the dissemination of the survey in an attempt to identify the staff member who had reported his discrimination and retaliation and to intimidate such individual and potential witnesses.

58.     Although Defendants have upon information and belief completed the investigation of Plaintiff's Title IX complaint, they have to date failed to correct the situation by removing Director Robinson from his position.

<u>PLAINTIFF'S DISCHARGE FROM EMPLOYMENT</u>

59.     The above-described conduct, including Director Robinson's retaliation and harassment of Plaintiff, Defendants' pervasive and inequitable allocation of Athletic Department resources and funding on the basis of gender and Defendants' refusal to address Director Robinson's conduct or to act to ensure Plaintiff a workplace free from gender-based harassment, retaliation and disparate treatment rendered Plaintiff's workplace so inhospitable that Plaintiff was forced to take a medical leave of absence from employment in or about January 2017.

60.     In or about August 2017, Defendants directed Plaintiff to return to her position effective on or about September 1, 2017.

61.     Defendants persisted in their refusal to address Director Robinson's conduct as alleged above or to otherwise act to ensure Plaintiff a workplace free from gender-based

harassment, retaliation and disparate treatment, thereby preventing Plaintiff from returning to her position.

62.     Thereafter, Plaintiff exhausted her remaining available leaves and accruals, leading to a cessation of her pay and benefits beginning in or about September 2017 and ongoing.

63.     In or about December 2017, Defendants advised Plaintiff that they would not offer her a further appointment to her position following the expiration of her current term appointment on January 1, 2019.

64.     Plaintiff's absence from her position with Defendants commencing with her leave of absence in January 2017 and ongoing has hindered Plaintiff's career and advancement opportunities by impairing her professional connections with other college athletic coaches, administrators and student athletes, as well as her recruiting contacts with high school coaches and student athletes.

<u>EEOC AUTHORIZATION TO FILE</u>

65.     On or about February 7, 2017, Plaintiff filed a charge against SUNY-New Paltz with the Equal Employment Opportunity Commission (EEOC) asserting claims of a harassment, gender-based hostile work environment and retaliation under Title VII, based upon the foregoing.

66.     On or about January 2, 2018, the EEOC issued Plaintiff a Notice of Right to Sue dated December 21, 2017.

67.     Such Notice was received by Plaintiff on or about January 10, 2018.

68.     Plaintiff brings this action within 90 days of the issuance of Notice of Right to Sue.

69.   Upon information and belief, SUNY received adequate notice of the charge of disability discrimination filed with the EEOC by Plaintiff.

70.   Upon information and belief, SUNY was given the opportunity to participate in EEOC conciliation proceedings aimed at voluntary compliance with respect to Plaintiff's charge of disability discrimination and retaliation.

71.   Upon information and belief, SUNY did in fact participate in EEOC conciliation proceedings aimed at voluntary compliance with respect to Plaintiff's charge of disability discrimination and retaliation.

72.   Upon information and belief, under all circumstances relevant hereto, the interests of SUNY are so similar to those of SUNY-New Paltz that it would have been unnecessary to include SUNY in the EEOC proceedings for the purpose of obtaining voluntary conciliation and compliance with respect to Plaintiff's charge of disability discrimination and retaliation.

73.   Upon information and belief, SUNY was not absent from the EEOC proceedings with respect to Plaintiff's charge of disability discrimination and retaliation and, to the extent that SUNY was absent from those proceedings, such absence did not result in actual prejudice to it.

74.   Through its participation in EEOC proceedings with respect to Plaintiff's complaint of disability discrimination and retaliation, SUNY represented to Plaintiff that its relationship with her was to be through SUNY-New Paltz.

AS AND FOR A FIRST CAUSE OF ACTION
(Title VII - Gender-Based Hostile Work Environment)

75.   Plaintiff repeats and reiterates each and every allegation in the preceding paragraphs as if set forth fully herein.

76.   By undertaking the foregoing, Defendants subjected Plaintiff to a gender-based hostile work environment.

77.     In so acting, Defendants violated Title VII of the Civil Rights Act of 1964.

78.     By undertaking the foregoing, Defendants have acted with malice or reckless indifference to Plaintiff's federally-protected rights.

79.     Defendants' conduct rendered Plaintiff's workplace so intolerable that a reasonable person would feel compelled to resign.

80.     As a proximate result of Defendants having subjected Plaintiff to a gender-based hostile work environment, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

### AS AND FOR A SECOND CAUSE OF ACTION
(Title VII - Retaliation)

81.     Plaintiff repeats and reiterates each and every allegation in the preceding paragraphs as if set forth fully herein.

82.     By undertaking the foregoing, Defendants retaliated against Plaintiff by subjecting her to adverse employment actions, including procuring her discharge, because Plaintiff complained about having been subjected to a gender-based hostile work environment.

83.     In so acting, Defendants violated Title VII of the Civil Rights Act of 1964.

84.     By undertaking the foregoing, Defendants have acted with malice or reckless indifference to Plaintiff's federally-protected rights.

85.     Defendants' retaliation rendered Plaintiff's workplace so intolerable that a reasonable person would feel compelled to resign.

86.     As a proximate result of Defendants having retaliated against Plaintiff because she complained about having been subjected to a gender-based hostile work environment, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past

earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

AS AND FOR A THIRD CAUSE OF ACTION
(Title IX – Discrimination and Disparate Treatment)

87.     Plaintiff repeats and reiterates each and every allegation in the preceding paragraphs as if set forth fully herein.

88.     By undertaking the foregoing, Defendants excluded Plaintiff from participation in, denied Plaintiff the benefits of and subjected Plaintiff to discrimination of an educational program on the basis of gender.

89.     In so acting, Defendants violated Title IX of the Education Amendments Act of 1972.

90.     As a proximate result of Defendants having excluded Plaintiff from participation in, denied Plaintiff the benefits of and subjected Plaintiff to discrimination on the basis of gender, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

AS AND FOR A FOURTH CAUSE OF ACTION
(Title IX – Retaliation)

91.     Plaintiff repeats and reiterates each and every allegation in the preceding paragraphs as if set forth fully herein.

92.     By undertaking the foregoing, Defendants retaliated against Plaintiff for having advocated against the discrimination and disparate treatment of female student athletes.

93.     In so acting, Defendants violated Title IX of the Education Amendments Act of 1972.

94.     As a proximate result of Defendants having retaliated against her for having advocated against the discrimination and disparate treatment of female student athletes, Plaintiff has suffered and continues to suffer substantial losses, including the loss of past earnings, the loss of future earnings, the loss of other employment benefits and mental anguish and emotional distress in an amount to be proved at trial.

JURY TRIAL DEMAND

95.     Plaintiff requests a jury trial in this matter.

WHEREFORE, Plaintiff requests judgment:

i.      Granting her actual damages in an amount to be determined at trial for lost wages and benefits, including an award of front pay;

ii.     Granting her compensatory damages in an amount to be determined at trial for the emotional distress suffered as a direct result of Defendants' discriminatory and retaliatory actions;

iii.    Granting her costs, pre and post judgment interest, and reasonable attorney's fees and costs and

iv.     Granting her such other and further relief as seems just and proper to the Court.

Dated: Rhinebeck, New York
         February 16, 2018

/s Russell G. Wheeler
Russell G. Wheeler (RW 8995)
Charny & Wheeler
9 West Market Street
Rhinebeck, New York  12572
Tel - (845) 876-7500
Fax - (845) 876-7501
rwheeler@charnywheeler.com

Attorneys for Plaintiff Elizabeth Student